UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JULIAN CAGGIANO,

                                    Plaintiff,              9:20-CV-1293
                                                            (BKS/TWD)

            v.

STEPHANIE N. AGOSH,

                                    Defendant.
_____

APPEARANCES:

JULIAN CAGGIANO
Plaintiff, *pro se*
Brooklyn, NY 11215

BRENDA K. SANNES
United States District Judge

**DECISION and ORDER**

**I.    INTRODUCTION**

        Pro se Plaintiff Julian Caggiano ("Plaintiff") commenced this action by filing a

Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") in the United States District Court

for the Western District of New York ("Western District") in July 2020, together with an

application to proceed in forma pauperis ("IFP").  Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP"

Application).  In the Complaint, Plaintiff asserts claims for the violation of his constitutional

rights arising out of his confinement in the custody of the Department of Corrections and

Community Supervision ("DOCCS") at Livingston Correctional Facility ("Livingston C.F.") and

Auburn Correctional Facility ("Auburn C.F.").  *See generally*, Compl.  At the time he filed the

Complaint, Plaintiff had been released from DOCCS' custody.  *Id*. at 1.

By Decision and Order filed on October 1, 2020 (the "October Order"), Western District Judge Charles J. Siragusa granted Plaintiff's IFP Application and severed and transferred the portion of Plaintiff's claims regarding events that occurred at Auburn C.F. to the Northern District of New York.  Dkt. No. 3.  The Western District retained jurisdiction over the claims that arose at Livingston C.F. and dismissed the claims, with leave to file an amended complaint before November 25, 2020.[1]  *Id*.

This action was transferred to this District on October 20, 2020.  Dkt. No. 4.  Presently before the Court for review is the portion of Plaintiff's Complaint relating to claims that arose in the Northern District.

## II.    SUFFICIENCY OF THE COMPLAINT

### A.  Governing Legal Standard

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[2]

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before

---

[1]     As of the date of this decision, Plaintiff had not filed an amended pleading in the Western District action.

[2]     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

2

the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).  Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotation marks and alterations omitted).

### B.  Summary of the Complaint[3]

---

[3]      The Complaint includes exhibits.  Compl. at 5-24.  To the extent that the exhibits are relevant to the incidents described in the Complaint, the Court will consider the Complaint as well as any documents attached as exhibits.  *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

3

The following facts are set forth as alleged by Plaintiff in his Complaint.[4]

On July 5, 2017, while incarcerated at Livingston C.F., Plaintiff was sexually harassed by Correctional Officer D.G. Rees ("Rees").  Compl. at 2.  On July 7, 2017, Plaintiff filed a PREA ("Prison Rape Elimination Act") complaint.  *Id*. at 3.

On August 12, 2017, while confined at Lakeview Correctional Facility, Plaintiff attempted suicide and cut himself with a razor.  Compl. at 2, 11, 18.

On August 15, 2017, defendant Stephanie Agosh ("Agosh"), a social worker, interviewed Plaintiff upon his admission to the Office of Mental Health ("OMH") Satellite Unit at Auburn C.F.  Compl. at 6, 9.  Plaintiff explained to Agosh that his suicide attempt was "directly related" to the sexual harassment which "stirred upon past trauma."  *Id.* at 18.  Plaintiff told Agosh that he was "willing to take meds" and "to receive therapy" and explained that he had "no coping skills."  *Id.*  Agosh told Plaintiff that he would be "seen again by OMH soon" but did not issue a "razor deprivation order."  *Id*. at 2, 18, 19.  On August 22, 2017, Plaintiff's "OMH call" was canceled, without explanation.  *Id*. at 18.

On August 24, 2017, Plaintiff was placed "on draft" to Mohawk Correctional Facility ("Mohawk C.F.").  Compl. at 18.  The Auburn "OBS" social worker assigned Plaintiff a "Level 4" mental health status level so that he could be transferred to a "medium that fit [his] needs[.]"[5]  *Id.*  On August 25, 2017, Plaintiff was transferred to Mohawk C.F. and placed on a suicide watch for one day.  *Id*.

---

[4]    The Court will not review the facts relating to claims that arose at Livingston C.F. for sufficiency pursuant to Section 1915(e).

[5]    Plaintiff does not identify the social worker.

On September 5, 2017, at 7:00 a.m., Plaintiff spoke with a sergeant in the medical building "because the PREA incident was still bothering" him.  Compl. at 18.  On September 6, 2017, Plaintiff spoke with Offender Rehabilitation Counselor ("ORC") Bananza and told him that the "PREA incident was still bothering him."  *Id*.  Bananza referred Plaintiff to OMH. *Id*.  On September 11, 2017, Plaintiff was interviewed by a social worker and told that he would be assigned a therapist and a doctor in thirty days.  *Id*.

On September 21, 2017, Plaintiff filed an action in the New York State Court of Claims against the State of New York and claimed that he was the victim of sexual assault.  Compl. at 23.

On September 28, 2017, Plaintiff was assigned a "Level 1S" mental health status level, the most severe mental level in the prison system, and transferred to Mid-State Correctional Facility.  Compl. at 2, 18.  Upon arrival, Plaintiff's ORC referred him to the Intermediate Care Program ("ICP").  *Id.* at 18.

On October 10, 2017, Plaintiff was interviewed by OMH staff member John Doe. Compl. at 18.  Plaintiff indicated that the July 2017 incident was "still bothering him" and asked to return to ICP.  *Id*.  Doe told Plaintiff that he would need to wait thirty days.  *Id*.

On October 12, 2017, after "giving up on receiving help" and suffering "retaliation" due to his PREA complaint, Plaintiff attempted suicide with a state issued razor.  Compl. at 2, 13, 18.

In December 2017, while confined at Marcy Correctional Facility, Plaintiff received medications and was diagnosed with post-traumatic stress disorder related to sexual abuse. Compl. at 19.

5

Construed liberally,[6] the Complaint contains the following: (1) Eighth Amendment deliberate medical indifference claim against Agosh for failing to provide adequate mental health treatment; (2) Eighth Amendment claim against Agosh for failing to issue a "razor deprivation order;" and (3) a First Amendment retaliation claim against Agosh. *See generally*, Compl.  Plaintiff seeks monetary damages. *See id*. at 4.  For a complete statement of Plaintiff's claims and the facts he relies on in support of those claims, reference is made to the Complaint.

### C.  Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

## III.   ANALYSIS

### A.  Eighth Amendment

---

[6]       The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised.  In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings.").

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Although the Constitution does not mandate a comfortable prison setting, prisoners are entitled to 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.' " *Brown v. Doe*, No. 13 Civ 8409, 2014 WL 5461815, at *6 (S.D.N.Y. Oct. 28, 2014) (quoting, *inter alia*, *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

### 1. Failure to Provide Adequate Mental Health Treatment

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Id.* (internal quotation marks and citations omitted). Addressing the objective element, to prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Courts in this district have held that allegations of mental illness and suicidal ideation are sufficient to satisfy the objective prong of the Eighth Amendment analysis. *See Loadholt v. Lape*, No. 9:09-CV-0658, 2011 WL 1135934, at *3 (N.D.N.Y. Mar. 3, 2011) (collecting cases).

"Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must

demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' ").

Non-medical personnel may be held liable for deliberate indifference to medical needs where a plaintiff demonstrates that the prison personnel intentionally denied or delayed access to medical care or intentionally interfered with medical treatment once it was prescribed. *See Banks v. No. 8932 Corr. Officer*, No. 11-CV-8359, 2013 WL 673883, at *4 (S.D.N.Y. Feb. 25, 2013) ("A prison guard's deliberate indifference to a serious medical need of a prisoner means intentionally denying or delaying access to medical care or intentionally interfering with medical treatment once it was prescribed."); *see also Estelle*, 429 U.S. at 104-05 (noting that deliberate indifference may be manifested when prison guards intentionally deny or delay access to medical care).

Upon review, the Court finds that Plaintiff has failed to plausibly plead that Agosh was deliberately indifferent to his serious mental health needs. Plaintiff was interviewed by Agosh, once, on August 15, 2017 at Auburn C.F. Plaintiff has not plead that he was denied any medical or mental health treatment from Agosh at that time. Indeed, Plaintiff claims that Agosh told him that he would be seen by OMH "soon," and he concedes that he had a call out two days later. Compl. at 18. There are no facts to suggest that Agosh was personally involved in the decision to cancel the OMH callout. Plaintiff was transferred out of Auburn C.F. ten days later. There are no facts in the Complaint suggesting that Plaintiff was denied

mental health treatment from Agosh during that ten day period.  While Plaintiff alleges that he was not placed on razor deprivation, as required by the rules and regulations, his allegation that this was "an act of deliberate indifference" by "Agosh and the OMH" is conclusory.  Plaintiff has failed to allege facts from which it could be plausibly inferred that Agosh had a culpable state of mind.  While the Complaint contains allegations related to Plaintiff's mental health needs and treatment at Mohawk C.F. and Mid-State C.F. from August 2017 until December 2017, Plaintiff has not alleged that Agosh was personally involved in decisions related to his medical treatment at those facilities.  Indeed, the Complaint does not include any facts that would allow the Court to infer that Plaintiff interacted with Agosh, in any manner, after the August 15, 2017 interview.

Accordingly, Plaintiff 's allegation that Agosh failed to provide adequate mental health care fails to plausibly suggest that Agosh was deliberately indifferent to any serious medical need.  Consequently, Plaintiff's Eighth Amendment claims against Agosh for failure to provide adequate mental health treatment are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

### 2. Failure to Protect

In order to establish an Eighth Amendment violation for failure to protect an inmate from harm, a plaintiff must "show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison official acted with "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (citation omitted); *Lewis v. Siwicki*, 944 F.3d 427, 430–31 (2d Cir. 2019).  Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must

9

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Construing the Complaint liberally, Plaintiff alleges that he was placed at risk because Agosh failed to impose a "razor deprivation order". As discussed *supra*, the Complaint fails to allege facts from which it could be plausibly inferred that Agosh had a culpable state of mind. Even assuming Agosh was authorized to issue such a directive as it relates to Plaintiff's confinement at Auburn C.F., Plaintiff has failed to plead facts that would allow this Court to infer that Agosh was authorized to issue a directive that was enforceable at any facility other than Auburn C.F. After his transfer from Auburn C.F., Plaintiff was seen by medical staff at Mohawk C.F., a social worker from OMH and OMH staff at Mid-State C.F. Compl. at 18. As discussed *supra*, the Complaint lacks facts suggesting that Agosh was personally involved in Plaintiff's medical treatment at Mohawk C.F. or Mid-State C.F.

Accordingly, Plaintiff's Eighth Amendment failure-to-protect claim against Agosh is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

## B. First Amendment Retaliation

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist.*

10

*Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d

Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).  The Second Circuit

has stated that courts must approach prisoner retaliation claims "with skepticism and

particular care," since "virtually any adverse action taken against a prisoner by a prison

official – even those otherwise not rising to the level of a constitutional violation – can be

characterized as a constitutionally proscribed retaliatory act."  *Dawes*, 239 F.3d at 491,

*overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing

*Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d

Cir. 1988).

Generally, alleged retaliation motivated by an action the prisoner took which did not

personally involve the prison officials is insufficient for a retaliation claim.  *See Ortiz v.

Russo*, No. 13 CIV. 5317, 2015 W L 1427247, at *12 (S.D.N.Y. Mar. 27, 2015) (granting

motion to dismiss retaliation claim where plaintiff "fail[ed] to allege any facts that would

support a finding that [the defendants] were personally motivated by the dismissal of an

earlier grievance they have no apparent connection with") (citation omitted); *Hare v. Hayden*,

No. 09 CIV. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it

is difficult to establish one defendant's retaliation for complaints against another

defendant.")). "[A] complaint which alleges retaliation in wholly conclusory terms may safely

be dismissed on the pleadings alone."  *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Insofar as Plaintiff attempts to assert a First Amendment retaliation claim based on

allegations that Agosh denied him mental health treatment or failed to issue a razor

deprivation order because Plaintiff filed a PREA complaint against Rees, the Complaint lacks

any allegations which plausibly suggest that Agosh was aware of the PREA complaint.  *See* *Brooks v. Hogan*, No. 9:14-CV-0477 (LEK/DJS), 2017 WL 1025966, at *3 (N.D.N.Y. Mar. 16, 2017) (finding "no basis in the Complaint for a First Amendment retaliation claim" where there was "no indication that [the defendants] was aware of any protected speech" that the plaintiff had engaged in); *Wilson v. Kelly*, No. 9:11-CV-0030 (MAD/RFT), 2012 WL 3704996, at *9 (N.D.N.Y. Aug. 27, 2012) (dismissing retaliation claim due to failure by the plaintiff to allege that the defendant was aware of the protected activity); *Smith v. Miller*, No. 15-CV-9561, 2017 WL 4838322, at *7 (S.D.N.Y. Oct. 23, 2017) ("While there may exist instances in which retaliation claims may be established against defendants who were not personally involved in the original incident, at a minimum, plaintiffs must allege that such defendants have personal knowledge of the protected activity that purportedly motivated the retaliatory conduct.").  Here, the Complaint lacks any facts suggesting that Agosh took any adverse action against Plaintiff based upon retaliatory intent.

Accordingly, Plaintiff's retaliation claim against Agosh is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

## IV.     CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that if Plaintiff wishes to proceed with this action, he must file an Amended Complaint as set forth above within **thirty (30) days** from the date of the filing of this Decision and Order; and it is further

**ORDERED** that if Plaintiff timely files an Amended Complaint, this matter be returned to the Court for further review; and it is further

12

**ORDERED** that if Plaintiff fails to timely file an Amended Complaint as directed above, the Clerk shall enter judgment indicating that this action is **DISMISSED** without prejudice without further order of this Court pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted and for failure to comply with this Decision and Order.  In that event, the Clerk is directed to close this case; and it is further

**ORDERED** in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), the Clerk of the Court is directed to provide Plaintiff with copies of opinions from Westlaw and the Federal Appendix cited in this Decision and Order; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff.

Dated: November 5, 2020

Brenda K. Sannes
U.S. District Judge

13